UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSOLIDATED ASSET MANAGEMENT SERVICES,<br><br>                    Petitioner,<br>vs.<br><br>ARIC L. BAKER in his official capacity as President of INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 459 and INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 459,<br><br>                    Respondents. | **ECF Case – Electronically Filed**<br><br>**Civil Action No.** 3:23-cv-178<br><br>**PETITION TO VACATE**<br>**ARBITRATION AWARD** |

Petitioner Consolidated Asset Management Services ("Petitioner or "CAMS"), by its attorneys, Peckar & Abramson, P.C., as and for its Petition against Respondents Aric L. Baker in his official capacity as President of International Brotherhood of Electrical Workers, Local Union No. 459 ("Baker") and International Brotherhood of Electrical Workers, Local Union No. 459 ("Local 459") (collectively "Respondents") alleges the following:

**NATURE OF ACTION**

1.      This action is brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 10 and 12, Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185 ("LMRA") and 42 Pa. C.S. § 7321.24 (4) and (5), seeking an Order vacating the July 6, 2023 Opinion and Award of Arbitrator David V. Breen ("Award") on the basis that the issues contained therein are not arbitrable. (A copy of the Award is annexed hereto as Exhibit "A").

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

This action is further brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 seeking a declaration that the issues addressed in the Award are not arbitrable.

## JURISDICTION

2. This Court possesses jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and § 301(c) of the LMRA, 29 U.S.C. § 185.

3. The Court possesses supplemental jurisdiction over the claims arising from state law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to § 301(a) of the LMRA, 29 U.S.C. § 185(a) and because the parties all reside in this Federal District and the Award at issue was entered into by the Arbitrator within this Federal District.

## PARTIES

5. Petitioner CAMS is an operator and manager of various power facilities in the United States and is an employer within the meaning of § 2(2) of the LMRA, 29 U.S.C. § 152(2).

6. Two of the power facilities that Petitioner provides operational and management services to is the Conemaugh Generating station located at 1442 Power Plant Road, New Florence, Pennsylvania ("CGS") and the Keystone Generating Station located at 313 Keystone Drive, Shelocta, Pennsylvania ("KGS").

7. Respondent Aric L. Baker is President and an Officer of International Brotherhood of Electrical Workers, Local Union No. 459 with offices located at 408 Broad Street, Johnstown, Pennsylvania.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

8. Respondent, International Brotherhood of Electrical Workers, Local Union No. 459 is a labor organization within the meaning of § 2(5) of the LMRA, 29 U.S.C. § 152(5). Its offices are located at 408 Broad Street, Johnstown, Pennsylvania.

## STATEMENT OF FACTS

**A.     The Pertinent Collective Bargaining Agreement**

9. CAMS and Local 459 are parties to a Collective Bargaining Agreement ("CBA") covering the duration May 15, 2019 to May 14, 2024. (A copy of the CBA is annexed hereto as Exhibit "B"). The CBA covers a bargaining unit of employees who work at the CGS and KGS. (See Exhibit "B").

### 1. Article VII Grievances - Conferences - Arbitration

10. Article VII of the CBA entitled <u>Grievances - Conferences – Arbitration</u>, provides the following language regarding the parties' agreed upon scope of grievances and arbitrations:

> Sec. 1. A grievance is hereby defined as any violation of the terms of this agreement, violation of the laws governing employer-employee relationships, or any action by the Company or its representative which causes an employee to lose his job or benefits arising out of his job.

(See Exhibit "B" at pg. 25).

### 2. Exhibit "D" Disability Plan Highlights

11. Exhibit "D" of the CBA entitled <u>Disability Plan Highlights</u>, provides CAMS' employees with the ability to apply for and receive long term disability benefits ("LTD") from independent carrier Unum Life Insurance Company of America ("Unum"). (See Exhibit "B" at pg. 49).


LAW OFFICES
Peckar & Abramson
A Professional Corporation

-3-

12. The pertinent parts of Exhibit "D" are as follows:

**Long-term Disability (LTD) Plan**

The onset of a disability could prevent you from working for an extended period. To help protect your income on a long-term basis, the Company offers disability insurance coverage under the Long-term disability (LTD) Plan (the "LTF Plan" or the "Plan").

The LTD plan provides a monthly income benefit for you when you are unable to work as a result of a disabling injury or sickness. <u>The LTD Plan is an insured Plan underwritten by Unum—an independent insurance company that will be referred to as the vendor Company ("the Vendor").</u>

**Paying for LTD Coverage**

The Company pays the entire cost of your basic LTD coverage.

**Elimination Period**

You need to satisfy the elimination period before LTD benefits can begin. The elimination period is the amount of time for which you must be continuously disabled before the LTD Plan pays benefits. Your elimination period starts on the day your disability begins and is the period of time during which no benefits are payable. Your elimination period is 180 days.

During your elimination period you will continue to be disabled if:

- You are limited from performing the material and substantial duties of your regular job due to your illness or injury; and

- You are under the regular care of a physician.

(See Exhibit "B" at pg. 49).

13. There exists no provision in the CBA that requires CAMS as opposed to Unum, to provide LTD benefits to its employees, to participate in Unum's decision-making process with regard to LTD benefit eligibility or to appeal Unum's decision in the case of a denial of LTD to an employee. (See Exhibit "B").

-5-

**B.     The Applicable Unum LTD Plan Document**

14.     In furtherance of Exhibit "D" of the CBA and to provide employees with additional information regarding the LTD benefits offered by Unum, eligibility and the application process, Unum provides CAMS' Local 459 bargaining unit employees with a Certificate of Insurance confirming that Unum is the provider of LTD coverage and a full Plan Description of the benefits offered, eligibility requirements, the application process and appeal process if benefits are denied ("Plan Document").  (A copy of the Plan Document is annexed hereto as Exhibit "C").

15.     The pertinent Plan Document covering the time frame of Wynn's request for LTD is dated May 15, 2020.  (See Exhibit "C").

16.     The Plan Document states that benefits are administered by the insurer [Unum] and provided in accordance with the insurance policy issued to the Plan.  (See Exhibit "C" at pg. 32).

17.     Importantly, there exists no provision in the Plan Document that requires CAMS as opposed to Unum to provide LTD benefits to its employees, to participate in Unum's decision-making process with regard to LTD benefit eligibility or to appeal Unum's decision in the case of a denial of LTD to an employee. (See Exhibit "C").

**C.     The Appeal Process**

18.     The Plan Document provides an appeal procedure when an employee's LTD benefits are denied.   (See Exhibit "C" at pg. 35).

19.     The <u>Appeal Procedures</u> provision of the Plan Document provides the following in pertinent part:

      a.     You have 180 days from the receipt of notice of an adverse benefit determination to file an appeal. Requests for appeals should be sent to the address

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

        specified in the claim denial.  A decision on review will be made not later than 45 days following receipt of the written request for review.

b.     You will have the opportunity to submit written comments, documents, or other information in support of your appeal . . .The review of the adverse benefit determination will take into account all new information, whether or not presented or available at the initial determination.  No deference will be afforded the initial determination.

c.     The review will be conducted by Unum and will be made by a person different from the person who made the initial determination and such person will not be the original decision maker's subordinate.  In the case of a claim denied on the grounds of a medical judgment, Unum will consult with a health professional with appropriate training and experience.  The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate.

d.     A notice that your request on appeal is denied will contain the following information:

- the specific reason(s) for the determination;

- a reference to the specific Plan provision(s) on which the determination is based;

- a statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or a statement that such information will be provided free of charge upon request);

- a statement describing your right to bring a lawsuit under Section 502(a) of ERISA if you disagree with the decision.

(See Exhibit "C" at pg. 35).

**D.    CAMS is not Unum's Agent**

20.    In order to ensure that there exists no dispute that CAMS has any relationship with Unum or the ability to influence its decision making process with regard to whether to award or deny benefits, the Plan Document specifically states:

> <u>Under no circumstances will your employer be deemed an agent of Unum.</u>

(See Exhibit "C" at pg. 11).

**E.    Facts Relating to Diane Wynn**

21.    During the relevant period herein, which includes her leave of absence, Diane Wynn ("Wynn") was employed by CAMS at its CGS in the title Maintenance Mechanic. (The pertinent provisions of the Transcript of the Arbitration at issue are annexed hereto as Exhibit "D")(See Exhibit "D" at pg. 124).

**F.    Wynn's Son**

22.    On or about May 28, 2018, Wynn' son was involved in a motorcycle accident that lead to a brain injury. (See Exhibit "D" at pgs. 129, 155).

**G.    Wynn Files for and Receives Short Term Disability**

23.    Wynn was able to work for CAMS from the May 28, 2018 date of her son's accident up until March 16, 2020.  (See Exhibit "D" at pgs. 126-129).

24.    As of March 16, 2020, Wynn was unable to work because as a result of her son's injuries, she was experiencing panic attacks, stress, loss of sleep, constant worrying and the inability to concentrate.  (See Exhibit "D" at pg. 131).

25.    As a result of the foregoing, Wynne applied for and received Short Term Disability ("STD") benefits for a period of twenty-six weeks. (See Exhibit "D" at pg. 133).

LAW OFFICES
Peckar & Abramson
A Professional Corporation

**H.     Wynn Files for and is Denied LTD Benefits by Unum**

26.     Wynn filed a claim for LTD benefits solely with Unum when her elimination period ended in September 2020. (See Exhibit "D" at pg. 154).

27.     Wynne did not file a claim with CAMS for LTD benefits. (See Exhibit "D" at pg. 154).

28.     Via letter dated November 30, 2020, Unum advised Wynn that it denied her claim for LTD benefits. (A copy of the letter is annexed hereto as Exhibit "E").

29.     The reasons set forth for the denial are as follows in pertinent part:

> The medical records do not reflect anxiety symptoms expected to impact functional loss. The office visits note normal mental status exams and reports that anxiety has stabilized on as needed medications. It's noted that you have been able to manage your son's full time care as well as caregiver assistance since May 12, 2020. There is no notation of observed or reported anxiety or panic attacks. There are no reports of depression, and treatment has not focused on depression. PTSD is not supported as there was only one mention of prior childhood trauma in the May 01, 2020 visit and then not again. Based on a review of the office visits received there is no discussion about anxiety preventing you from returning to work. It is noted that you indicated that taking care of your son as a barrier for returning to work.
>
> Your policy provides payments when you are unable to perform your regular occupation due to your illness or injury. We have confirmed that there currently no physicians providing any restrictions or limitations for you. This means that you do not meet the policy's definition of disability and are not eligible for disability payments.
>
> **Policy Provisions**
>
> We relied upon your policy when making our decision, including provisions listed below, and the Company reserves its right to enforce other provisions of the policy.

(See Exhibit "E").

30. CAMS played no role in Unum's decision to deny Wynne LTD benefits. (See Exhibit "E").

**I. Wynn via the Union Filed an Appeal of Unum's Decision to Deny her LTD Benefits**

31. Via letter dated April 16, 2021, the Union on Wynn's behalf, filed an appeal of Unum's decision to deny her LTD Benefits solely with Unum. (A copy of the letter is annexed hereto as Exhibit "F").

32. CAMS was not copied on the appeal letter. (See Exhibit "F").

**J. Unum Denies Wynn's Appeal**

33. Via letter dated October 29, 2021, Unum denied Wynn's appeal for LTD benefits on the basis that she was not continuously disabled during the time frame of her elimination period. (A copy of the letter is annexed hereto as Exhibit "G").

34. CAMS played no role in Unum's decision to deny Wynne's appeal seeking LTD benefits. (See Exhibit "G").

**K. The Arbitration and Award**

35. Subsequent to the receipt of Unum's denial of LTD benefits, Local 459 filed a grievance against CAMS to recover the LTD benefits denied by Unum.

36. The parties were unable to resolve the grievance and therefore Local 459 filed for arbitration against CAMS in support of its grievance.

37. Unum was not named as a party to the arbitration. (See Exhibit "A").

38. The arbitration took place on November 16, 2022. (See Exhibit "A").

39. The issue presented to the Arbitrator at the arbitration was as follows:

> Did the Employer violate Exhibit "D" of the CBA, entitled <u>Disability Plan Highlights</u>, by virtue of Unum's denial of Wynn's claim for LTD benefits, and if so, what shall the remedy be?

(See Exhibit "A").

40.   Prior to commencing the arbitration, and during its opening statement, CAMS notified both the Arbitrator and Local 459 that it contested the jurisdiction of the arbitrator because the issue of Unum's denial of LTD benefits to Wynne is not arbitrable. (See Exhibit "D" at pgs. 44-45).

41.   CAMS further stated that it would not participate in the arbitration unless it was understood and agreed by both the Arbitrator and Local 459 that by participating in the arbitration it was not waiving its right to address the arbitrability issue in a separate Court action if it so decided pending the outcome of the Arbitrator's Award.  (See Exhibit "D" at pgs. 44-45).

42.   Both the Arbitrator and Local 459 stipulated to CAMS' contingency that it would not waive its right to contest the Arbitrator's jurisdiction and the arbitrability of Unum's denial of Wynne's LTD benefits in a separate Court action by participating in the arbitration. (See Exhibit "D" at pgs. 44-45).

43.   In light of the parties' stipulation, CAMS participated in the arbitration. (See Exhibit "D" at pgs. 44-45)

44.   In an Opinion and Award dated July 6, 2023, the Arbitrator upheld Local 459's grievance and directed CAMS to make Wynne whole for the LTD benefits that were denied by Unum. (See Exhibit "D").

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

-10-

**AS AND FOR A FIRST CAUSE OF ACTION**
(Order Vacating the Arbitrator's July 6, 2023 Opinion and Award)

45. CAMS repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs of this Petition with the same force an effect as though alleged herein.

46. It is well established that "whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance—is undeniably an issue for judicial determination." AT&T Technologies, Inc. v. Communication Workers of America, 475 U.S. 643 (1986); Western Pennsylvania Motor Carriers Association, 574 F.2d 783 (3rd Cir. 1978)(questions of arbitrability are for the Courts to decide); Laborers' International Union of North America, AFL-CIO v. Foster Wheeler Corp., 868 F.2d 573, 576 (3rd Cir. 1989)(the question of arbitrability is undeniably an issue for judicial determination).

47. Moreover, it is well settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582 (1960). See also, United States Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 570-71 (1960) (concurring opinion); See also Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1512 (3rd Cir. 1994) (The question as to whether a particular dispute is arbitrable necessarily depends on whether the parties agreed to submit the dispute to arbitration).

48. When applying the foregoing precedent to Union-Employer disputes over employee benefit plan eligibility such as in the instant case, it is further well settled that where such an issue is not included as part of the parties' arbitration clause, the issue is excluded from adjudication via arbitration. Teamsters Local Union No. 783 v. Anheuser-

LAW OFFICES
Peckar & Abramson
A Professional Corporation

Busch, Inc., 626 F.3d 256 (6th Cir. 2010); United Steelworkers of America AFL-CIO-CLC v. Commonwealth Aluminum Corporation, 162 F.3d 447 (6th Cir. 1998); International Association of Machinist and Aerospace Workers Dist. No. 10 v. Waukesha Engine Division, Dresser Industries, Inc., 17 F.3d 196 (7th Cir. 1994); Local Union No. 4-449, Oil, Chemical and Atomic Workers Union, AFL-CIO v. Amoco Chemical Corporation, 589 F.2d 162 (5th Cir. 1979).

49. A Union's grievance challenging denial of benefits will be considered expressly excluded from a collective bargaining agreement's arbitration clause, and not arbitrable, when: (1) the collective bargaining agreement references and identifies a plan document, thus incorporating the plan by reference into the collective bargaining agreement; and (2) the plan document explicitly provides an alternative procedural framework for resolving benefit eligibility disputes, by providing a detailed framework by which an individual could make a claim for benefits to the plan and appeal the denial of the claim to an appeal committee. Id. at 262.

50. Consistent with the foregoing precedent, the Unum Plan Document, is both incorporated by reference in the CBA, and expressly provides a detailed alternative procedural framework for resolving such disputes which the Local 459 by providing a detailed framework by which an individual could make a claim for benefits to the plan and appeal the denial of the claim to an appeal committee, such as the issue of Wynne's LTD benefit eligibility, to be utilized without including CAMS in the process thus excluding the issue from arbitration as a matter of law.

51. Importantly, Local 459 utilized that appeal process on Wynne's behalf after Wynn was initially denied benefits via Unum's November 30, 2020 denial letter.

LAW OFFICES
Peckar &
Abramson
A Professional Corporation

52. Thus, pursuant to the above cited precedent and related facts alleged herein, there exists no valid, current or enforceable agreement with Local 459, pursuant to which CAMS must arbitrate the issue of Unum's denial of LTD benefits to Wynne.

53. In the absence of such an agreement CAMS is not, and was not, obligated to arbitrate the issue of Unum's denial of LTD benefits to Wynne with Local 459.

54. Since there exists no agreement to arbitrate the issue of Unum's denial of LTD benefits to Wynne between CAMS and Local 459 this Court should enter an Order vacating the Award in its entirety.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201)**

55. CAMS repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs of this Petition with the same force an effect as though alleged herein.

56. Since there exists no agreement to arbitrate the issue of Unum's denial of LTD benefits to Wynne between CAMS and Local 459 this Court should enter an Order pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the issue of Unum Life Insurance Company of America's denial of Long Term Disability Benefits to Dianne Wynn or any other bargaining unit employee is not arbitrable pursuant to the CBA between CAMS and Local 459.

LAW OFFICES
Peckar & Abramson
A Professional Corporation

**WHEREFORE**, Petitioner Consolidated Asset Management Services respectfully demands judgment against Respondents Aric L. Baker in his official capacity as President of International Brotherhood of Electrical Workers, Local Union No. 459 and International Brotherhood of Electrical Workers, Local Union No. 459 as follows:

(a) Vacating the July 6, 2023 Opinion and Award of Arbitrator David V. Breen in its entirety;

(b) Declaring that the issue of Unum Life Insurance Company of America's denial of Long Term Disability Benefits to Dianne Wynn or any other bargaining unit employee is not arbitrable pursuant to the CBA between Petitioner and Respondents.

(c) Awarding Petitioner attorneys' fees, disbursements and costs of suit; and

(d) Awarding Petitioner such other and further relief as the Court deems just and proper.

Dated: August 3, 2023

PECKAR & ABRAMSON, P.C.

By: _____
Aaron C. Schlesinger, Esq.
Pennsylvania Bar No.90734
Pending Admission *Pro Hac Vice*
Counsel to Petitioner
Consolidated Asset Management Services
70 Grand Avenue
River Edge, New Jersey 07661
(201) 343-3434